# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YONEL JEAN BAPTISTE, | : | Civil No. 3:18-CV-01484 |
| Plaintiff, | : | |
| v. | : | |
| KATHRYN MORRIS, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Presently before the court are a series of discovery related motions filed by Baptiste: Docs. 81, 82, 83, 85, 88, 90, 92**,** 93, 101, 126, 128, 139, 144 and 148. Baptiste had the opportunity to brief his motions, and Defendants have had the opportunity to respond to all of the motions. Thus, the motions are ripe for disposition.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Yonel Jean Baptiste ("Plaintiff" or "Baptiste") is a federal inmate formerly housed at the Allenwood United States Penitentiary ("USP Allenwood"), in White Deer, Pennsylvania.[1] He initiated this action on July 15, 2018. This action proceeds on the amended complaint, Doc. 12. Baptiste names the following Bureau of Prisons employees as Defendants: Psychologist Kathryn Morris, Treatment Specialist Marwin Reeves, Case Manager J. Moroney, Unit Manager M.

---

[1] Baptiste is currently housed at USP Florence – High, Florence, CO. *See https://www.bop.gov/ inmateloc/* (search: Yonel, Baptiste; last visited: April 16, 2021).

Rodarmel, Special Investigative Agent ("SIA") Heath, and Warden L. J. Oddo. (Doc. 12.)

Baptiste's amended complaint concerns his confinement at USP Allenwood from October 1, 2015 to May 4, 2016. He alleges Defendants removed him from USP Allenwood's Challenge Program, a residential treatment program, and transferred him to a higher security level facility in retaliation for his grievances and complaints concerning his Treatment Team's falsification of records, failure to intervene, conspiracy, and the denial of necessary mental health care. (*Id.*) He also alleges he was placed in the Special Housing Unit without due process. (*Id.*) Defendants answered the amended complaint after the court denied their motion for summary judgment based on the statute of limitations. (Docs. 53, 57.)

In his various motions to compel and motions for sanctions, Baptiste challenges the veracity of some of Defendants' discovery responses and seeks the disclosure of documents leading to his transfer from USP Allenwood to a higher security level facility.

## JURISDICTION

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331 which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARDS OF REVIEW

### A. Motion to Compel

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). If a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

### B. Motion for Sanctions for Failure to Admit

Rule 36(a)(1) provides that a party may serve on any other party a request to admit to the truth of any discoverable fact. When answering a request for admission the party must admit the proposition, specifically deny it, state in detail why the party can neither admit nor deny it, or object to the request. Fed. R. Civ. P. 36(a)(3)–(4). Where "issues in dispute are requested to be admitted, a denial is a perfectly reasonable response." *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 967 (3d Cir. 1988). When the requesting party challenges the

3

sufficiency of an answer or objection, and the court determines the objection justified, the court may deem the request admitted or direct an amended answer be served. Fed. R. Civ. P. 36(a)(6). Additionally, once a responding party answers or objects to a request for admissions, Rule 37(c) allows the propounding party to seek a judicial determination as to the sufficiency of the answer and the propriety of any objection. When addressing such a motion where "the requesting party later proves a document to be genuine or the matter true," the court must grant reasonable expenses to the moving party "unless: (A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit." Fed. R. Civ. P. 37(c)(2). As to the third exception, "the true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." Fed. R. Civ. P. 37 advisory committee's notes. It matters not whether the answering party prevails at trial, but rather whether the answering party reasonably believed that it might prevail at trial. *Leonard v. Stemtech Int'l*, 834 F.3d 376, 402 (3d Cir. 2016) (quoting *Yoder & Frey Auctioneers, Inc. EquipmentFacts, LLC*, 774 F.3d 1065, 1074–75 (6th Cir. 2014) (Rule 37(c)(2) motion granted where withholding party "did not have reasonable grounds to believe it might prevail").

## DISCUSSION

### A. Motions to Strike Affirmative Defenses Set Forth in Defendants' Answer (Docs. 81, 88)

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Third Circuit Court of Appeals cautions that "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). Thus, where the insufficiency of the defense is not clearly apparent on the face of the pleading, and relies upon materials outside of the pleadings, the motion should not be granted. *See Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, Civ. No. 1:20-CV-0640, 2020 WL 7488876, at (M.D. Pa. Dec. 21, 2020). "The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where […] the factual background for a case is largely undeveloped." *Cipollone*, 789 F.2d at 188. It is improper to attempt to use a motion to strike "to persuade a court to determine disputed questions of law" or fact. *Castelli–Velez v. Moroney*, Civ. No. 3:20-CV-0976, 2021 WL 978814, *2 (M.D. Pa. March 16, 2021) (citing *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D. N.J. 1993)).

Without further elaboration, Baptiste's two motions to strike are subject to dismissal as they attack Defendants' affirmative defenses by relying on materials

outside of the pleadings. *See* Docs. 81, 88. Specifically, Plaintiff cites certain of Defendants' responses to his discovery to argue the invalidity of the asserted affirmative defenses. The court would be required to make factual and legal determinations based on snippets of the facts in this case as presented by Plaintiff. The court declines to undertake that analysis at this procedural posture. Baptiste will have the opportunity at summary judgment, or at trial, to present such arguments. Accordingly, Baptiste's motions to strike Defendants' affirmative defenses will be denied as Plaintiff has not satisfied his burden of proving that the defenses are immaterial or insufficient and that he will be prejudiced if the defenses remain.

**B. Motion to Compel & Motion for Sanctions – Production of Documents Request No. 2, "A copy of any and all records or memorandum(s) that was submitted with Plaintiff's Transfer Application to DSCC on or about May 5, 2016. (Doc. 82, 126, 128, 148)**

Plaintiff states that BOP Policy Statement 5100.08 "mandates that an SIS investigation must be conducted and completed before applying a Transfer Code 323." (Doc. 82, p. 1.) Baptiste seeks a copy of the SIS investigation submitted in conjunction with the BOP's May 5, 2016 Transfer Application that was coded a "323 Transfer" and that requested his transfer to a Higher Security Institution. (Doc. 14, p. 70; *see also* Doc. 126.) He claims he was transferred on May 31, 2016, "due to the outcome of that SIS investigation." (*Id.*) Baptiste claims the

6

existence of such a report based on Defendant Rodarmel's response to interrogatory 22 in which he stated, "[t]here was a memorandum prepared from the SIS and sent to the DSCC." (*Id*., p. 2.) Baptiste alleges Defendants are withholding this report as they did not produce it in response to his document request seeking the "SIS Investigation Report" which "commenced on or around April 14, 2016 and was concluded on or around May 04, 2016." (Doc. 98–2, p. 2; Doc. 128, p. 1, Doc. 148, p. 3.)

In their response, Defendants argue that Baptiste conflates two discovery requests that ask for distinctly different information. They contend Baptiste's interrogatory request asking whether a "Close Supervision investigation report [was] completed and forwarded to DSCC" is "clearly different than a general request for an SIS investigation report." (Doc. 98, p. 5.) Nonetheless, Defendants state they have provided Baptiste "with a copy of the memorandum prepared by the SIS and sent to the DSCC that Defendant Rodarmel was referring to" in his interrogatory response. (*Id.*) Defendants produced a May 4, 2016 memorandum written by SIA Heath. (Doc. 98-6.) Defendants later clarified their response, noting that the Office of Internal Affairs ("OIA") investigates complaints against BOP employees, whereas the Office of Special Investigative Services ("SIS") is responsible for conducting investigations of inmates. (Doc. 140-2, p. 3.) OIA uses Special Investigative Agents ("SIA") to conduct field investigations and prepare

reports.  This information is consistent with SIA Heath's May 4, 2016, memorandum suggesting Baptiste was involved in an ongoing OIA staff investigation (OIA-2016-04124) and that "due to the nature of the investigation, [he] [felt] it would be prudent for Baptiste to be transferred to another facility commensurate with his programming needs."  (Doc. 98-6.)

Thus far, the court has identified three reports in connection with this action: (1) OIA-2019-04124, an OIA report concerning Baptiste's allegations concerning Challenge Program staff misconduct in April 2016; (2) SIA Heath's one-page May 4, 2016 memorandum, which is not a SIS investigation of Baptiste, but is "the memorandum prepared by the SIS and sent to the DSCC that Defendant Rodarmel was referring to in his response to interrogatory number 22," and (3) a Close Supervision Investigation. (Doc. 98, p. 5.)   Defendants state that "[t]here was not an SIS investigation and report concerning Baptiste."  (Doc. 140, p. 4.)  The only SIS "report" is SIA Heath's May 4, 2016, memorandum.  (Doc. 140.)  Baptiste has a copy of this memorandum which he submitted in conjunction with his amended complaint.  A redacted copy of the Request for Transfer/Application has also been made available for Baptiste's inspection.  (Doc. 151.)

However, it is unclear to the court whether the Close Supervision Investigative Report (item 3 from the above paragraph) was produced in connection with the transfer application.  Also, Baptiste seeks unredacted copies of

all reports. Accordingly, Defendants will be directed to clarify the existence of the reports at issue and whether they have been already been produced for Baptiste's inspection. If Defendants seek to withhold or redact any portion of any report, they must file a motion for a protective order and submit the necessary supporting documentation and affidavits. Based on the above, the court will stay a decision on Baptiste's motion to compel documents related to his Transfer/Application, Docs. 82, 126, 128, 148. The court will also stay Plaintiff's motion for sanctions based on Defendants' responses Plaintiff's Request for Production of Documents related to documents submitted in conjunction with the May 5, 2016 Transfer Request, Doc. 126, pending further response from Defendants.

### C. Defendants' Failure to Respond to Plaintiff's Third & Fourth Request for Production of Documents and Failure to Serve Timely Responses to Request for Admissions Directed to Defendant Reeves (Docs. 83, 85, 101)

Baptists states that he served his third request for production of documents on Defendants on August 11, 2020. (Doc. 83.) A week later, he served Defendants with his fourth request for production of documents and a request for admissions addressed to Defendant Reeves. (Docs. 85, 101.) Defendants were granted an enlargement of time, until October 21, 2020, to respond to Plaintiff's discovery. (Doc. 77.) On October 28, 2020, Baptiste filed motions to compel asserting Defendants had not yet responded to either request for production of documents. With respect to Defendant Reeves' request for admissions, Baptiste

9

filed a motion to deem his requests admitted because he did not receive the response until October 29, 2020. Baptiste filed this final motion on November 22, 2020. (Doc. 101.) Notably, Baptiste did not agree to withdraw any of these motions. *See* Docs. 150, 152.

The court will deny both of Baptiste's motions related to the responses to his requests for production of documents. The motions are denied because Defendants' certificates of service indicate that service of the responses to both requests for production of documents was made on October 21, 2020, which was timely. (Docs. 97-11, p. 6, 97-12, p. 5.) Likewise, the court will deny Baptiste's motion to deem Defendant Reeves' response to his request for admissions as admitted, because the response was timely served on Baptiste. (Doc. 97–8, p. 10.)

### D. Motion for Discovery Sanctions/Motion to Compel Related to Defendant Morris' alleged Failure to Admit or Disclose (Docs. 90, 92, 144)

Baptiste argues that he is entitled to monetary sanctions and other relief against Defendant Morris pursuant to Fed. R. Civ. P. 37(a)(4) and (c)(2) after she "refused to admit" that "Community Meetings were scheduled and conducted at 9:30 a.m. – 10:30 a.m., and not 7:30 a.m. – 8:30 a.m.," and that she "was never in her office on February 9, 2016 at 8:31 a.m." (Doc. 90, p. 2.) Baptiste provides two sworn witness statements from inmates who attended the Challenge Program at USP Allenwood in 2015 and 2016 who state that the Community Meetings they

10

attended were held between 9:30 a.m. and 10:30 a.m. (*Id.*, pp. 6–7.) He asks that Defendant Morris' responses to his requests for admission numbers 17, 18 and 24 be deemed admitted pursuant to Fed. R. Civ. P. 36(a). Additionally, he argues that Defendant Morris failed to adequately respond to Interrogatories 10, 12, and 20. (Doc. 144.) Baptiste has not briefed his motions.[2]

In opposition to Baptiste's motion for sanctions, Doc. 90, Defendant Morris provided a declaration and three documents in support of her discovery responses and denies impeding the discovery process in this action. (Doc. 96–5, ¶ 3.) With respect to the Community Meetings, she provides a copy of a 2018 Challenge Schedule and states the meeting started around 7:30 a.m. and ended around 8:30 a.m. (*Id.*, ¶ 4, p. 5.) Also, finding that her conversations with Baptiste on January 11, 2016 and February 9, 2016 "were clinically significant," she documented each. (*Id.*, ¶ 5.) She provides copies of each of her Clinical Encounter notes. (*Id.*, pp. 3–4.) Defendants did not file a response to Baptiste's motion challenging Defendant

---

[2] Pursuant to M.D. Pa. Local Rule 7.5, any party filing a motion is required to file a supporting brief within 14 days of filing their motion or the motion "shall be deemed to be withdrawn." *See* M.D. Pa. Local Rule 7.5. Local Rule 5.1(h) requires that the motion and supporting brief be separate documents. *See* M.D. Pa. Local Rule 7.5. Baptiste's adherence to these local rules is spotty. Until recently, Baptiste has filed combination documents consisting of his motion and supporting brief. *See* Doc. 90. However, in other instances, he does not file a supporting brief at all. *See* Doc. 92. Baptiste is forewarned that even though he is self-represented, he will be required to follow these rules in the future. From this date forward, his failure to do so will result in his motions being deemed withdrawn.

Morris' interrogatory responses. Nonetheless the interrogatory responses are in the record for the court's review.

Baptiste's requests and Defendant Morris' responses are set forth below:

> **Request No. 17:** Admit that I was not physically in your office for alleged Clinical Contact/Individual Session dated January 11, 2016.
>
> **Response:** Denied. The clinical contact of January 11, 2016 indicates the plaintiff was in the Psychology Office.
>
> **Request No 18:** Admit that I did not meet with you briefly following the weekday Community Meeting at 8:31 a.m., on February 09, 2016.
>
> **Response:** Denied. There is a clinical contact for February 9, 2016.
>
> **Request No. 24:** Admit that on February 26, 2016, you staged that mock "Challenge Meeting" because of my grievance against you.
>
> **Response:** Denied as stated. On February 26, 2016, you met with a treatment team.

(Docs. 96–1, pp. 5–6, 96–3, pp. 6, 8.)

> **Interrogatory 10:** Aside from the morning and afternoon scheduled programming Module Groups, what time did you usually schedule inmates/patients for Contact, Clinical Contacts/ Individual Session(s)?
>
> **Response:** It varies as my schedule allows.
>
> **Interrogatory 12:** Was [Baptiste] physically in your office during this Clinical Contact on January 11, 2016?

> **Response:** Clinical contacts take place in Psychology offices.
>
> **Interrogatory 20:** Have you ever conducted a Clinical Contact/Individual Session with [Baptiste] from 9:50 to 10:30 a.m., during the weekday Community Meeting?
>
> **Response:** The usual weekday community meeting time is 7:30 AM to 8:30 AM.

(Doc. 96–4, pp. 4, 5, 7.)

Defendant Morris has demonstrated a reasonable basis for her belief that she will prevail on the disputed issues in this matter. No more is required at this pre-trial stage. The fact that she does not agree with Baptiste's version of the facts in this matter does not demonstrate bad faith on her part. Further, Baptiste also has not proven that he is entitled to relief under Rule 37(c) as there is an apparent dispute of fact as to the timing of the community meeting schedule in 2016 as well as his physical presence in Defendant Morris' office on January 11, 2016 and February 9, 2016.

Whether Baptiste or Defendant Morris will prevail at trial remains to be seen. However, at this point, Baptiste's discovery motions, Docs. 90 and 92, related to his requests for admission will be denied. The court will also deny Baptiste's motion to compel Defendant Morris to supplement her interrogatory

responses to certain interrogatories 10, 12, and 20. (Doc. 144.) The court will not direct a further response under these circumstances.[3]

### E. Motion for Discovery Sanctions against Defendant Reeves (Doc. 139)

Plaintiff contends that Defendant Reeves' discovery responses are an "attempt to help Defendant Morris cover-up her misconduct of lying about the scheduling of Community Meetings for 2015/2016, which Plaintiff did later prove to be inconsistent." (Doc. 139, p. 1.) Specifically, Baptiste takes issue with Reeves' response to interrogatories 7 and 10 and request for admission 15. (*Id.*) Defendants had 14 days from Baptiste's filing of his discovery motions report to respond to any outstanding discovery motions, including this one. (Doc. 143, p. 1.) Defendants did not file a response to the motion. Nonetheless, Reeves' verified discovery responses appear in the record. Based on a review of Defendant Reeves'

---

[3] With respect to Baptiste's motion to compel supplemental responses from Defendants Rodarmel and Moroney due to what he believes to be non-responsive interrogatory answers, the court will not endeavor to guess why Baptiste believes their answers to be "vague or evasive or incomplete responses." (Doc. 144.) Thus, his motion to compel, Doc. 144, will be denied without prejudice. However, Baptiste is cautioned that baseless discovery motions border on sanctionable behavior and an abuse of the discovery process. If Baptiste seeks to compel further responses from any Defendant, he should be prepared to specify the basis of each response challenged. While the court does allow Baptiste leeway and flexibility in his drafting of documents due to his self-represented status, he must provide a reasonable basis and explanation for his motions so Defendants can properly respond, and the court may address his discovery concerns. Likewise, the mere recitation of case law pertaining to a motion to compel without any application to the discovery responses subject to the motion to compel does not fulfill the requirement of a brief explaining why Plaintiff challenges a response as "evasive" or "vague." (*See* Doc. 149, Pl's. Br. in Supp. Mot. for Order.) Accordingly, Baptiste's motion to compel further responses from Morris, Rodarmel and Moroney, Doc. 144, will be denied.

interrogatory responses, Doc. 97–10, and his response to Baptiste's request for admissions, Doc. 97–7, Baptiste's motion for sanctions will be denied.

The subject discovery requests focus on ascertaining the time of morning when Community Meetings occurred in 2015 and 2016. Baptiste's interrogatory 10 asks "[a]ccording to the Challenge Program Inmate Handbook of 2015/2016, exactly what time was the morning Community Meeting scheduled for?" As Defendant Reeves no longer works for the BOP and does not have access to BOP documents or files, he responded that "community meetings typically occurred between 7:30 AM to 8:30 AM." (Doc. 97–10, pp. 4–5.) This answer is consistent with his response to request for admission 15. Baptiste requested Defendant Reeves to "[a]dmit that Community Meetings was scheduled for 9:50 AM to 10:30 AM, *per Challenge Program Inmate Handbook* for 2015/2016, and was conducted at that specific time a scheduled." (Doc. 97–8, p. 5.) (emphasis added). Defendant Reeves neither admitted nor denied this request due to his lack of access to BOP documents. (*Id*.) Baptiste did not ask Defendant Reeves to admit that the meetings took place between 9:50 a.m. and 10:30 a.m. He asked Defendant Reeves if the handbook specified that morning meetings were to be held between 9:50 a.m. to 10:30 a.m. If Defendant Reeves did not have access to the handbook, as suggested in his interrogatory response, he could not admit or deny the request for admission. Baptiste does not suggest he provided Defendant Reeves with a

15

copy of the handbook or the portion that addressed meeting schedules. Baptiste's motion for sanctions against Defendant Reeves, Doc. 139, will be denied.

### F. Defendant Moroney's Responses to Requests for Admission 10 and 164 will not be deemed admitted. (Doc. 93)

In response to Baptiste's requests for admission 10 and 16, Defendant Moroney "neither admitted nor denied" the requests, explaining that he is "no longer at USP-Allenwood, and [does] not have [access] to [Baptiste's] file." (Doc. 93, p. 2.) Baptiste claims the responses were "not made in good faith" because as a "defendant and former employee of USP-Allenwood" Moroney has "unimpeded access" to Plaintiff's records through his attorney and did not state that a reasonable inquiry was made.

An "answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). Here, Defendant Moroney is no longer employed at USP-Allenwood, and he states that

---

[4] Request 10 states:
> Admit that [Baptiste] completed several educational programs by receiving Certificates of Completion.

Request 16 states:
> Admit that [Baptiste] was current in "FRP" payments while [he] was incarcerated at USP-Allenwood.

*See* Doc. 93, pp. 1–2.

16

he does not have access to Plaintiff's file. Plaintiff is asking Defendant Moroney to admit as true matters that are outside of Defendant's knowledge, and the information sought is obtainable from sources other than Defendant Moroney who is no longer employed at USP-Allenwood. As Baptiste has failed to demonstrate Defendant Moroney's bad faith in his responses, which explain why he cannot admit or deny the identified requests for admissions, the motion to deem matters admitted, Doc. 93, will be denied.

An appropriate order will issue.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 30, 2021